UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DION SCOTT BUCKELEW,

Plaintiff,

v.

WILLIAM D. GORE, et al.,

Defendants.

Case No.:  20-cv-00158-WQH-JLB

**REPORT AND RECOMMENDATION**

**[ECF No. 3]**

## I.     <u>INTRODUCTION</u>

Before the Court is specially-appearing Defendants' Motion to Quash Service and Dismiss for Lack of Personal Jurisdiction, or alternatively, Dismiss for Failure to State a Claim.  (ECF No. 3.)  Plaintiff Dion Scott Buckelew is a state pretrial detainee proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  (ECF No. 1-2 at 4.)   This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1 of the United States District Court for the Southern District of California.  After a thorough review of the parties' filings and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** on the bases that Plaintiff failed to properly serve any Defendant, and the Court therefore lacks personal jurisdiction over Defendants.  Alternatively, the Court **RECOMMENDS** that

Defendants' motion be **GRANTED** on the basis that the Complaint fails to state a claim upon which relief can be granted.

## II.     BACKGROUND

### A.     Factual Allegations[1]

The Court derives the following facts from the Complaint:  On or about May 14, 2019, Plaintiff was released from Tri-City Medical Center into the custody of the San Diego County Sheriff's Department after approximately five days of "hospitalization on life support."  (ECF No. 1-2 at 9.)  From May 14 through May 24, 2019, Plaintiff was detained at the Vista Detention Facility in the inmate safety program.  (*Id.*)

### 1.     Allegations Concerning Defendant Webster

Around May 16 through May 18, 2019, Plaintiff "encountered" Defendant Webster, an officer of the Sheriff's Department.  (*Id.*)  On several of Defendant Webster's "routine walks," he "stared, laughed[,] and grinned" at Plaintiff, which made Plaintiff "feel worthless, alone, confused, angry, uncared about[,] and suicidal."  (*Id.*)  Plaintiff made "several verbal requests for medical and psychiatric care and treatment" to Defendant Webster, who responded by saying, "Yah, you'll see someone soon," "Not right now," "In a little while," "Should be soon," "I said later," and "Any time now Buckelew."  (*Id.*)  Plaintiff "pleaded with [Defendant] Webster to see medical and mental health [providers] due to pain, M.S. symptoms, di[zz]iness, migra[i]ne, depression, extreme anxiety, chest pains, nausea[,] and insomnia."  (*Id.*)  However, Defendant Webster lied to Plaintiff about "medical and mental healthcare treatment[,] which was extremely provoking to Plaintiff."  (*Id.* at 10.)

At one point while Plaintiff was still detained at the Vistage Detention Facility, Defendant Webster "came into [Plaintiff's] safety cell and took [his] food, cosmetics and paperwork while laughing and saying[,] 'This is all trash[,]' and threw it in the garbage

---

[1]     The Court accepts as true the allegations in the Complaint only for purposes of assessing whether the Complaint fails to state a claim.

can." (*Id.*)  On a couple of occasions, Plaintiff asked Defendant Webster for a broom and dust pan, which prompted laughter and responses from Defendant Webster such as, "In a little while Buckelew," and "Not right now." (*Id.*)  Defendant Webster "continued his behavior" even though Plaintiff "was scared, very distraught, depressed, very anxious, confused[,] and in severe physical and emotional pain." (*Id.* at 11.)

### 2.    Allegations Concerning Doe Defendants 1–5

On or about May 19, 2019, Plaintiff was moved from the inmate safety cell to Housing Module Upper West 5, Cell 35, where Doe Defendant 1 "denied [him] church service." (*Id.*)  When Plaintiff questioned "deputies" about being denied church service and requested phone access to call his attorney, he was moved to Housing Module Upper West 1, Cell 34. (*Id.*)  Plaintiff was locked in this cell for approximately four days "without running water," despite making "numerous complaints" to Doe Defendants 2, 3, 4, and 5. (*Id.*)

### 3.    Allegations Concerning Non-Parties Milke and Mejina

On or about May 24, 2019, at around 4:00 AM, deputies awoke Plaintiff for transfer to George Bailey Detention Facility ("GBDF"). (*Id.*)  Upon arrival at GBDF, Plaintiff told the transport deputy that he was not feeling well. (*Id.* at 11–12.)  While deputies were escorting Plaintiff to Housing Area 4, Plaintiff lost consciousness. (*Id.* at 12.)  After a medical assessment, Plaintiff was taken to a holding cell, where he encountered Deputies Milke and Mejina. (*Id.*)

Deputy Mejina made "several unprofessional, taunting[,] [and] belittling comments" to Plaintiff, such as "We're gonna get buck wild Buckelew," "What's wrong Buckelew, don't you wanna get buck wild Buckelew[,]" and "Don't worry Buckelew, we're gonna get buck wild, ok Buckelew?" (*Id.*)  When Plaintiff asked Deputy Mejina why he was behaving in this manner, Deputy Mejina responded, "Don't fuckin['] worry about it Buckelew.  Before we get buck wild, I'm gonna put these fucking chains on you extra tight, ok Buckelew!" (*Id.*)  Deputy Mejina then placed a waist chain around Plaintiff "extremely tight," causing Plaintiff "severe pain" and "trouble breathing." (*Id.*)  Deputy Mejina told

Plaintiff, "There you go Buckelew[.]  [A]fter your fuckin['] leg chains are on, we can go buck wild, ok Buckelew." (*Id.* at 12–13.)  Deputy Mejina proceeded to put ankle chains on Plaintiff, causing Plaintiff to "cr[y] out in pain. (*Id.* at 13.)  Deputy Mejina "aggressively pulled and pushed [Plaintiff] to the county sheriff vehicle and pushed him [in]to the back seat." (*Id.*)  When Plaintiff asked the deputies to loosen the chains, they said, "We'll be there in a while," and "Shut up Buckelew." (*Id.*)

When Plaintiff arrived at Sharpe Chula Vista Hospital, he made several requests to "deputies" to loosen the chains on him and for food and water.  (*Id.*)  The deputies responded with comments like, "You're fine Buckelew, shut up," and "Quit asking us Buckelew." (*Id.*)  After several hours of waiting in "severe pain" and with "trouble breathing," Plaintiff received "I.V. fluids." (*Id.* at 14.)  A doctor told Plaintiff that he "was severely dehydrated," and the dehydration had caused Plaintiff's confusion and loss of consciousness. (*Id.*)  Plaintiff told the doctor he "had been locked in a cell for a few days with no running water, no water for approx[imately] 4 days, [and] no food for 17–19 [hours]." (*Id.*)  Plaintiff was later transported back to GBDF. (*Id.*)

**B.** **Procedural Background**

Plaintiff filed his Complaint in San Diego Superior Court on December 12, 2019. (ECF No. 1-2 at 2.)  Plaintiff names Sheriff William D. Gore, Captain Lovelace, Captain Buchanan, Corporal C. Webster, and Does 1 through 5 as Defendants. (*Id.*)  The Complaint alleges seven different causes of action: (1) general negligence against Defendant Webster; (2) intentional tort against Defendant Webster; (3) premises liability; (4) a violation of 42 U.S.C. § 1981; (5) a violation of 42 U.S.C. § 1983; (6)  a violation of 42 U.S.C. § 1985; and (7) a violation 42 U.S.C. § 1986. (*Id.* at 4.)  Plaintiff seeks both compensatory and punitive damages. (*Id.*)

On December 20, 2019, Johnny D. Dears, a detainee at the San Diego Central Jail, mailed a copy of the Complaint and summons address to each named Defendant in a single envelope addressed to: William D. Gore, Sheriff of San Diego County, Sheriff Department, ///

P.O. Box 939062, San Diego, CA 92193-9062. (ECF No. 1-3 at 4, 16–17.) An unspecified individual received the envelope on December 27, 2019. (ECF No. 1 at 2.)

On January 24, 2020, Defendant Gore removed this case to the United States District Court for the Southern District of California. (*Id.* at 3.) On January 31, 2020, Defendants Gore, Lovelace, Buchanan, and Webster filed the instant motion. (ECF No. 3.) Defendants move to: (1) quash service pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that Plaintiff did not properly serve any Defendant; and (2) dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(5) on the ground that—due to Plaintiff's failure to effectuate service—the Court lacks personal jurisdiction over Defendants. (ECF No. 3-1 at 8.) Alternatively, Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*Id.* at 9–10.) Plaintiff filed an opposition to Defendants' motion on February 26, 2020. (ECF No. 5.) Defendants filed a reply on March 6, 2020. (ECF No. 6.)

### III.   MOTION TO QUASH SERVICE AND DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A.   Insufficient Service of Process

Specially-appearing[2] Defendants Webster, Gore, Lovelace, and Buchanan move to quash service and argue that Plaintiff failed to properly serve any Defendant under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure. (ECF No. 3-1 at 8.) Plaintiff does not respond to Defendants' challenge regarding the validity of service in his opposition. (*See* ECF No. 5.)

##### 1.   Legal Standards

###### a.   Sufficiency of Service After Removal from State Court

A defendant may challenge the sufficiency of the plaintiff's service of process by filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(5). Once a defendant

---

[2]   The Court notes that Defendant Gore's Notice of Removal specifically preserved his right to object "to the adequacy [of] service of process in this action." (ECF No. 1 ¶ 8.)

1  challenges the sufficiency of service, the plaintiff bears the burden of establishing that
2  service was valid. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "When a case
3  is removed from state court to federal court, the question [of] whether service of process
4  was sufficient prior to removal is governed by state law." *Whidbee v. Pierce County*, 857
5  F.3d 1019, 1023 (9th Cir. 2017) (citing *Lee v. City of Beaumont*, 12 F.3d 933, 936–37 (9th
6  Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a
7  state law issue."), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex
8  Corp.*, 533 F.3d 1087 (9th Cir. 2008)); *see also* Wright & Miller, Federal Practice and
9  Procedure § 1082 (2020) ("In determining the validity of service in the state court prior to
10  removal, a federal court must apply the law of the state under which the service was
11  made.").

12        b.   <u>Service by Mail Under California Law</u>

13      Service under California law is governed by §§ 413–417 of the California Code of
14  Civil Procedure ("CCP"). Under § 413.30, a plaintiff can effectuate service by mail by
15  mailing a copy of the summons and complaint by first-class mail or airmail to the person
16  to be served, together with two copies of a specific notice and acknowledgement, and a
17  pre-paid return envelope addressed to the sender. Cal. Civ. Proc. Code § 415.30(a).
18  Service by mail is only deemed complete on the date the written acknowledgment of a
19  receipt of summons is executed by the person to be served and the acknowledgment is
20  returned to the sender. Cal. Civ. Proc. Code § 415.30(c).

21      California courts, however, do not require strict compliance with service of process
22  statues. *Gibble v. Car-Lene Rsch., Inc.*, 67 Cal. App. 4th 296, 313 (1998). If the defendant
23  receives actual notice of the lawsuit, courts hold that substantial compliance with the
24  statutory requirements is generally sufficient. *See Pasadena Medi-Center Assocs. v.
25  Superior Ct.*, 9 Cal. 3d 773, 778 (1973). "'Substantial compliance . . . means actual
26  compliance in respect to the substance essential to every reasonable objective of the
27  statute.' Where there is compliance as to all matters of substance[,] technical deviations
28  are not to be given the stature of noncompliance." *S. Pac. Transp. Co. v. State Bd. of*

6

*Equalization*, 221 Cal. App. 3d 438, 442 (1985) (citations omitted) (quoting *Stasher v. Harger-Haldeman*, 58 Cal. 2d 23, 29 (1962)).  Yet, "[s]ubstantial compliance with the [California] rules regarding service of process requires at least some degree of compliance with the statutory requirements."  *Colley v. Vierra*, No. CV 19-1988-FMO (AGR), 2020 WL 1216753, at *4 (C.D. Cal. Feb. 5, 2020) (citing *Carol Gilbert, Inc. v. Haller*, 179 Cal. App. 852, 866 (2009)); *see also Abers v. Rohrs*, 217 Cal. App. 4th 1199, 1206 (2013) ("The obligation to serve a party with process is not coextensive with merely providing the party with notice of the proceeding.  Even undisputed actual notice of a proceeding does not substitute for proper service of the . . . complaint.").

## 2.  Discussion

Here, Plaintiff enlisted Mr. Dears, a detainee at the San Diego County Jail, to execute service of process by mail, seemingly pursuant to CCP § 415.30.  Mr. Dears partially executed a summons as to each named Defendant, and the proofs of service attached to each summons indicate that service was executed "by other means."  (ECF No. 1-3 at 2–13.)  A handwritten document executed by Mr. Dears and titled "Proof of Service By U.S. Mail" provides that on December 20, 2019, Mr. Dears attempted to serve Defendants by mailing a copy of each summons, the Complaint, an Alternative Dispute Resolution (ADR) Package, and a Notice of Case Assignment and Case Management Conference in a single envelope addressed to: William D. Gore, Sheriff of San Diego County, Sheriff Department, P.O. Box 939062, San Diego, CA 92193-9062.  (*Id.* at 16.)

Defendants argue that the Court should quash service because neither the Federal Rules of Civil Procedure nor the CCP permit a plaintiff to serve an individual in-state defendant by mailing documents to that individual's employer at a post office box.[3]  (ECF

---

[3]    The Court notes that the Complaint does not specify whether Plaintiff is suing Defendants in their official or individual capacities.  However, Plaintiff seeks only monetary relief (ECF No. 1-2 at 4) and each named Defendant is a state employee.  State employees sued for damages in their official capacities are entitled to immunity under the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Sellars v.*

No. 3-1 at 8–9.)   However, whether Plaintiff's service of process was sufficient under the Federal Rules of Civil Procedure is irrelevant.   Because Plaintiff attempted to serve Defendants prior to removal, the Court must apply California law to determine whether Plaintiff properly effectuated service of process. *Whidbee*, 857 F.3d at 1023.

Defendants cite only to CCP §§ 415.10–30 for the proposition that California law does not permit service of an individual in-state defendant by mailing process to the post office box of the defendant's place of employment.   Although § 415.30 sets forth the requirements for service by mail, nothing in § 415.30 or the other CCP sections cited by Defendants provide that service to such an address is improper.   Defendants do not provide any authority as to what types of addresses are proper for service by mail.

Contrary to Defendants' position, California law does not clearly prohibit service by mail to an individual's place of employment or to a post office box.   Although the CCP does not provide what types of addresses are sufficient for service by mail under § 415.30, at least one California appellate court has found that a post office box is a proper address. *See TransAmerica Title Ins. Co. v Hendrix*, 34 Cal. App. 4th 740, 745 (1995).   In *TransAmerica*, the court reasoned that a post office box was a sufficient address for service by mail by looking to case law interpreting a statutory predecessor to CCP § 415.50, which required a copy of the summons and complaint to be mailed to the person to be served at his or her place of residence. *Id.*  The court reasoned that:

> At least two courts defined the term "residence" not as the defendant's abode, but rather as "the address at which letters would be most likely to reach the defendant."  This interpretation of "residence" is relevant to our holding a post office box is a sufficient address for service under Code of Civil Procedure 415.30 because it demonstrates how statutory language and judicial comments should be read to achieve the statute's fundamental objective of serving notice on the defendant.   Whenever possible, a statute should be interpreted as broadly as necessary to effectuate the statute's purpose.

---

*Procunier*, 641 F.2d 1295, 1301 n.13 (9th Cir. 1981).   Thus, the Court construes the Complaint to assert allegations against each named Defendant in their individual capacities only.

*Id.* (citations omitted) (quoting *Sousa v. Freitas*, 10 Cal. App. 3d 660, 663 (1970)). Following the approach in *TransAmerica*, the Court here cannot find that the San Diego County Sheriff's Department's post office box was an insufficient address for service by mail under § 415.30.

However, to properly serve a defendant by mail under § 415.30, a plaintiff must mail not only a copy of the complaint and summons, but two copies of a notice and acknowledgement form and a pre-addressed return envelope with postage paid. There is no dispute here that Plaintiff failed to provide two copies of a notice and acknowledgment form and a pre-paid, pre-addressed return envelope for each Defendant. Without the inclusion of two copies of a notice and acknowledgment form and a pre-paid, pre-addressed return envelope, the Court cannot find that Plaintiff substantially complied with § 415.30. The Court is mindful that Plaintiff is a *pro se* litigant, but at least one other court in this District has reached the same conclusion when applying California law to a motion to quash a *pro se* plaintiff's service for failure to substantially comply with § 415.30. In *Bovier v. Bridgepoint Education/Ashford University*, the *pro se* plaintiff attempted to serve the defendants by mail pursuant to CCP § 415.30 but failed to include "two copies of the notice and acknowledgment form and a return envelope." No.: 3:17-cv-01052-GPC-JMA, 2017 WL 4922978, at *2 (S.D. Cal. Oct. 30, 2017). The *pro se* plaintiff argued that "a certifying acceptance official" had signed the postal return receipts, but the court found that return receipts were "not a substitute for an executed acknowledgment of return of summons," and the plaintiff had not otherwise demonstrated compliance with § 415.30. *Id.* Accordingly, the court quashed service due to the plaintiff's "failure to strictly comply with the notice and acknowledgment and return envelope requirements of § 415.30." *Id.*

Like in *Bovier*, Plaintiff here omitted the required two copies of the notice and acknowledgment form and a pre-paid, pre-addressed return envelope for each Defendant. Furthermore, in addition to omitting these documents, there were other issues with Plaintiff's attempted service. For example, Mr. Dears mailed a copy of the Complaint and

each summons in an envelope addressed only to Defendant Gore.  (ECF No. 1-3 at 16–17.)  Further, Mr. Dears only partially executed a summons with respect to each named Defendant, for the "Notice to the Person Served" section on each summons is incomplete.  (*See id.* at 2, 5, 8, 11.)  Even assuming Defendants received actual notice of this action,[4] Plaintiff has not demonstrated substantial compliance with the California service of process statutes and has instead "crafted [his] own rule for service by mail."  *See DH Holdings, LLC v. Meridian Link, Inc.*, No. CV 09-9117 ABC, 2010 WL 11597616, at *4–5 (C.D. Cal. Apr. 9, 2010) ("There is no dispute that Plaintiff did not include the required acknowledgment under [§] 415.30, so service was not effective under California law. . . . [T]he Court will not rewrite the state statutes under the guise of 'substantial compliance' to provide for a method of service not already included in those previsions.").  Moreover, Plaintiff bears the burden of establishing the validity of service on a Rule 12(b)(5) motion, *Brockmeyer*, 383 F.3d at 801, and Plaintiff's opposition is silent as to the issue of service.

### 3.   Conclusion

Because Plaintiff did not substantially comply with California's service of process requirements, Plaintiff has not properly served any Defendant.    Thus, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** with respect to their challenge to service and that the Complaint be **DISMISSED**.[5]

///

///

---

[4]   Defendants do not argue that they did not receive actual notice of this action from Plaintiff's attempted service.

[5]   "When a court finds that service was insufficient, it has discretion to either dismiss the action or quash service of process and give an opportunity to serve the defendant effectively."  *Colley*, 2020 WL 1216753, at *2.  Given Plaintiff's *pro se* status, the Court would under ordinarily recommend that he be given an additional opportunity to properly serve Defendants.  However, as discussed below, the Court also finds that the Complaint fails to state a claim upon which relief can be granted.  Therefore, allowing Plaintiff another opportunity to serve Defendants with the instant Complaint would be futile.

## B.  Lack of Personal Jurisdiction

Specially-appearing[6] Defendants Webster, Gore, Lovelace, and Buchanan move to dismiss the Complaint on the basis that the Court lacks personal jurisdiction over them because Plaintiff failed to effectuate service.  (ECF No. 3-1 at 9.)  Plaintiff does not respond to Defendants' personal jurisdiction challenge in his opposition.  (*See* ECF No. 5.)

A defendant may move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure] 4."  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)).  Rule 4(e) provides that an individual may effectuate service by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;

---

[6]     The Court notes that although Defendant Gore's Notice of Removal did not specifically preserve objections to personal jurisdiction, as it did with insufficient service of process objections (ECF No. 1 ¶ 8), Defendant Gore did not waive objections to personal jurisdiction by filing the Notice of Removal.  *See Tribank Cap. Invs., Inc. v. Orient Paper, Inc.*, No. CV11–3708–R, 2013 WL 4200898, at *4 (C.D. Cal. Aug. 14, 2013) ("In removing a case, a [d]efendant does not waive challenges to personal jurisdiction, subject matter jurisdiction, venue, service of process, etc.; removal merely places the resolution of those questions in the hands of a federal judge in the first instance."); *Maplebrook Townhomes LLC v. Greenbank*, No. 10–CV–03688–LHK, 2010 WL 4704472, at *4 (N.D. Cal. Nov. 12, 2010) ("[T]he United States Supreme Court has held that a removal to federal court counts as a special appearance and does not waive the right to object to personal jurisdiction.  Therefore, [a defendant] is within its rights to object to personal jurisdiction although it removed this case to federal court." (citing *Wabash W. Ry. v. Brow*, 164 U.S. 271, 278–79 (1896))).

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  "[W]ithout substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'"  *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

Here, Plaintiff did not properly serve any Defendant in compliance with Rule 4(e)(2)(A), (B), or (C), as none of these subsections permit service by mail.  And, as discussed above, Plaintiff did not properly serve any Defendant under California law, so Plaintiff has not complied with Rule 4(e)(1) either.  Because Plaintiff did not substantially comply with Rule 4, the Court does not have personal jurisdiction over any Defendant.  Accordingly, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** with respect to Defendants' personal jurisdiction challenge and the Complaint **DISMISSED** for lack of personal jurisdiction.

## IV.   MOTION TO DISMISS

Specially-appearing Defendants Webster, Gore, Lovelace, and Buchanan also move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (ECF No. 3-1 at 10.)

### A.   Legal Standards

#### 1.   Motion to Dismiss

The Federal Rules of Civil Procedure require the complaint to provide a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard that Rule 8 imposes does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555). Rule 8 may be violated when a pleading "says too little" and "when a pleading says too much." *Knapp v. Hogan*, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original); *see also Cafasso, United States ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (stating that a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint).

A motion to dismiss for failure to state a claim upon which relief can be granted is brought under Federal Rule of Civil Procedure 12(b)(6), which tests the legal sufficiency of the claims in the complaint. *See Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Cooney v. Rossiter*, 583 F.3d 967, 971 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79.

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991). The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). However, the court

is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). In addition, when an allegation in the complaint is refuted by an attached document, the court need not accept the allegation as true. *Roth*, 942 F.2d at 625 n.1.

### 2. *Pro Se* Litigants

With respect to a *pro se* plaintiff's pleadings, the factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that the less-stringent standard applies to *pro se* pleadings post-*Twombly*). Thus, when a plaintiff proceeds *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must 'allege with at least some degree of particularity overt acts which defendants engaged in' that support the plaintiff's claim." *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (quoting *Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2d Cir. 1964)).

### B. **Discussion**

### 1. **Dismissal Pursuant to Rule 8**

As an initial matter, the Court finds that the Complaint violates Rule 8's requirement that a pleading set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(1). The Complaint does not clearly identify the nature of each of Plaintiff's causes of action, the specific facts giving rise to each cause of action, or, with the exception of Plaintiff simply listing Defendant Webster under his general negligence and intentional tort causes of action, the specific Defendant or Defendants against whom each cause of action is brought. As Defendants highlight,

Plaintiff does not include Defendants Gore, Lovelace, and Buchanan in any of the Complaint's factual allegations. These three Defendants are mentioned solely in the Complaint's list of defendants. (*See* ECF No. 1-2 ¶ 1.) Plaintiff's fifty-eight-page opposition details many allegations absent from the Complaint, some concerning these Defendants. (*See* ECF No. 5.) However, because Plaintiff raises these new allegations in his opposition, and not the Complaint, the Court may not appropriately consider them for purposes of Defendants' motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.").

Although a *pro se* litigant is held to less stringent pleading standards, Plaintiff must still "allege with at least some degree of particularity overt acts which Defendants engaged in" that support his claims. *Jones*, 733 F.2d at 649 (quoting *Powell*, 327 F.2d at 137). Absent specific allegations identifying what actions Defendants Gore, Lovelace, and Buchanan took against Plaintiff and how such actions violated Plaintiff's rights, the Complaint fails to provide these three Defendants with fair notice of the claims against them or the grounds upon which the claims rest.

As to Defendant Webster, he is the only Defendant that Plaintiff includes in the Complaint's factual allegations. However, Plaintiff does not connect any factual allegation concerning Defendant Webster to any specific cause of action. As Defendants argue, "[t]he Complaint contains a factual narrative involving multiple verbal exchanges between [Defendant] Webster and Plaintiff, but does not describe which interactions are the basis for [Plaintiff's] claim[s], or the legal theories behind the Complaint." (ECF No. 3-1 at 12.) The Court agrees with Defendants that the Complaint fails to provide Defendant Webster with notice pursuant to Rule 8 with respect to all causes of action, except for Plaintiff's § 1983 cause of action.

The Court disagrees with Defendants that the Complaint "fails to give [Defendant] Webster] notice of the legal basis for *any* of the claims against him" and that "[h]ow [Defendant] Webster's actions are linked to a [constitutional] deprivation is not . . .

15

apparent from the factual recitation in the Complaint." (*Id.* at 12, 15 (emphasis added).) Because Plaintiff is a *pro se* litigant, the Court must liberally interpret the Complaint and afford Plaintiff the benefit of any doubt. *Hebbe*, 627 F.3d at 342. Although "[t]he constitutional right that is the basis for the [§] 1983 claim is not listed," as Defendants argue, the Complaint details several verbal requests by Plaintiff to Defendant Webster for medical care that Defendant Webster seemingly disregarded, apparently resulting in Plaintiff being denied necessary medical care. (ECF No. 1-2 at 9–10.) The Court finds Plaintiff's allegations surrounding his requests for medical care are sufficient to put Defendant Webster on notice of a § 1983 claim for inadequate medical care under the Fourteenth Amendment's Due Process Clause. Additionally, Plaintiff's allegations that Defendant Webster confiscated and then threw away his "food, cosmetics, and paperwork" are sufficient to put Defendant Webster on notice of a § 1983 claim for deprivation of property also under the Fourteenth Amendment's Due Process Clause.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss for a violation of Rule 8 be **GRANTED** and the Complaint **DISMISSED** as to Defendants Gore, Lovelace, and Buchanan. The Court further **RECOMMENDS** that Defendants' Motion to Dismiss *for violation of Rule 8* be **DENIED** as to Plaintiff's § 1983 claims against Defendant Webster and **GRANTED** and the Complaint **DISMISSED** as to all other claims against Defendant Webster.

>      **2.    Dismissal Pursuant to Rule 12(b)(6)**
>
>           a.    § 1983 Cause of Action Against Defendant Webster
>
>                i.    *Fourteenth Amendment Claim for Inadequate Medical Care*
>
>                     A.    Legal Standard

Claims for inadequate medical care by a pretrial detainee arise out of the Fourteenth Amendment's Due Process Clause. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or if not yet convicted, under the Fourteenth Amendment's Due Process Clause.").

A plaintiff asserting a Fourteenth Amendment claim for inadequate medical care must show that the officials who denied medical care acted with deliberate indifference. *Id.* at 1068.

"In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The plaintiff "must first 'show a "serious medical need" by demonstrating that failure to treat [his] condition could result in further significant injury or the "unnecessary and wanton infliction of pain."'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (quoting *Jett*, 439 F.3d at 1096). Upon demonstration of a serious medical need, the plaintiff must then show that the defendant's response was deliberately indifferent. *Id.* at 786.

The deliberate indifference standard with respect to a pretrial detainee's Fourteenth Amendment claim for inadequate medical care is an objective one. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citing *Castro*, 833 F.3d at 1070). The Ninth Circuit recently enumerated the objective deliberate indifference components as:

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125; *see also Narcisse v. Tafesse*, No. 5:16-CV-00682-EJD, 2019 WL 4417635, at *5 (N.D. Cal. Sept. 16, 2019) (finding that *Gordon* focused only on the requisite state of mind for a defendant's conduct and did not eliminate the requirement that plaintiffs also show the existence of a serious medical need). The Ninth Circuit previously explained that "[w]ith respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the "facts and circumstances of each particular case."'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). The "'mere lack of due care by a state official' does not 'deprive an

individual of life, liberty, or property under the Fourteenth Amendment.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)).   Thus, a plaintiff asserting an inadequate medical care claim under the Fourteenth Amendment must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

> ### B.   Analysis

As provided above, Plaintiff alleges that he made "several verbal requests for medical and psychiatric care and treatment" to Defendant Webster, who responded by saying, "Yah, you'll see someone soon," "Not right now," "In a little while," "Should be soon," "I said later," and "Any time now Buckelew." (ECF No. 1-2 at 9.)  Plaintiff further alleges that he "pleaded with [Defendant] Webster to see medical and mental health [providers] due to pain, M.S. symptoms, di[zz]iness, migra[i]ne, depression, extreme anxiety, chest pains, nausea[,] and insomnia." (*Id.*)  Plaintiff seemingly never received the medical care he requested, for he alleges that Defendant Webster "[lied] to [him] "in regards to medical and mental healthcare treatment." (*Id.* at 10.)

Defendants do not dispute that multiple sclerosis, migraines, depression, anxiety, and insomnia are serious medical needs that meet the first prong of a deliberate indifference claim.  However, even assuming that these conditions, alone or in combination, constitute a serious medical need, the facts as Plaintiff alleges them do not objectively demonstrate that Defendant Webster was deliberately indifferent to these needs.  Plaintiff does not clearly allege that he told Defendant Webster that he was in pain or that Defendant Webster knew Plaintiff was experiencing multiple sclerosis symptoms, dizziness, migraines, depression, anxiety, chest pains, nausea, and insomnia.  The reasonableness of an officer's actions and whether he acted with deliberate indifference is viewed in light of "what the officer knew at the time." *Kingsley*, 135 S. Ct. at 2473.  The lack of any facts plausibly supporting the conclusion that Defendant Webster had knowledge of the conditions that spurred Plaintiff's requests for medical care makes Defendant Webster's actions—or inaction—objectively reasonable.

///

18

1    Moreover, the facts as Plaintiff alleges them do not plausibly support the conclusion

2    that Defendant Webster made an intentional decision to deny Plaintiff's requests for

3    medical care.   Plaintiff therefore fails to meet the first deliberate indifference element

4    articulated in *Gordon*.   Plaintiff alleges only that Defendant Webster responded to his

5    requests for medical care by stating that Plaintiff would see someone "soon," or "in a little

6    while."  Plaintiff does not allege that it was because of an intentional inaction by Defendant

7    Webster that he failed to receive medical assistance.

8    Although Plaintiff may be able to allege additional facts to support a Fourteenth

9    Amendment claim for inadequate medical care against Defendant Webster, the Court finds

10   that, without more, the Complaint does not plausibly allege that Defendant Webster was

11   deliberately indifferent to any one of Plaintiff's serious medical needs.

12                    *ii.*    *Fourteenth Amendment Claim for Deprivation of Property*

13                        A.    Legal Standard

14   The Fourteenth Amendment's Due Process Clause protects prisoners' interests in

15   their personal property.  *Hanson v. May*, 502 F.2d 728, 720 (9th Cir. 1974).  However, the

16   Due Process Clause does not protect against all deprivations of property by the state; it

17   only protects against deprivations "without due process of law."   Const. Amend. XIV;

18   *Baker v. McCollan*, 443 U.S. 137, 145 (1979).   Where the state must act quickly out of

19   necessity, or where providing pre-deprivation process may be impractical, a meaningful

20   post-deprivation process satisfies the Due Process Clause.  *Parratt v. Taylor*, 451 U.S. 527,

21   538–39 (1981), *overruled on other grounds by Daniels*, 474 U.S. 327.  Where a deprivation

22   of property is caused by conduct pursuant to established state procedure, post-deprivation

23   remedies do not satisfy due process.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

24   In contrast, an intentional but unauthorized or a negligent deprivation of property by a state

25   employee "does not constitute a violation of the procedural requirements of the Due

26   Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy

27   is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *accord Barnett v. Centoni*, 31

28   F.3d 813, 816–17 (9th Cir. 1994) ("[A] negligent or intentional deprivation of a prisoner's

property fails to state a claim under [§] 1983 if the state has an adequate post[-]deprivation remedy." (citing *Hudson*, 468 U.S. at 533)).   The California Tort Claims Act, commonly referred to as the California Government Claims Act, provides an adequate post-deprivation state remedy for the random and unauthorized taking of property.  *Barnett*, 31 F.3d at 816–17 ("California [l]aw provides an adequate post-deprivation remedy for any property deprivations.").

### B.    Analysis

Here, Plaintiff alleges that Defendant Webster "took [his] food, cosmetics and paperwork" from his cell "while laughing and saying[,] 'This is all trash.'"  (ECF No. 1-2 at 10.)  Defendant Webster then allegedly threw these items in a garbage can.  (*Id.*)  To the extent Plaintiff challenges Defendant Webster's unauthorized and intentional taking of his personal property under § 1983, the California Government Claims Act provides Plaintiff with an adequate state post-deprivation remedy.  Therefore, any substantive or procedural due process claims by Plaintiff challenging the loss of his property are not cognizable under § 1983 and fail to state a claim as a matter of law.  *See, e.g.*, *Nible v. Fink*, No. 16-cv-02849-BAS-RBM, 2019 WL 2242075, at *3 (S.D. Cal. May 23, 2019) (finding that the inmate plaintiff's allegations concerning the defendant's confiscation of his rune set "fail[ed] to state a claim . . . for a violation of his due process rights because the alleged deprivation was unauthorized, and California provides adequate post-deprivation remedies").

### iii.    *Conclusion*

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) be **GRANTED** and the Complaint **DISMISSED** as to Plaintiff's § 1983 claims against Defendant Webster.

### b.    Supervisor Liability of Defendants Gore, Lovelace, and Buchanan

As stated, Plaintiff does not include Defendants Gore, Lovelace, and Buchanan in any of the Complaint's factual allegations.  However, to the extent Plaintiff names these individuals as defendants because he believes that they are liable for Defendant Webster's

actions, supervisory personnel are generally not liable under § 1983 for the actions of their subordinates on a theory of *respondeat superior*. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[T]here is no respondeat superior liability under [§] 1983.").  Instead, a supervisor is liable under § 1983 only if he or she was personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

As an initial matter, the Complaint does not establish the relationship between the four named Defendants or make clear whether Defendant Webster was a subordinate of Defendants Gore, Lovelace, and Buchanan.  However, even assuming Defendant Webster did report to any of these three defendants—given his title as "corporal"—the Complaint does not plausibly allege that Defendant Webster violated Plaintiff's constitutional rights. Accordingly, to the extent Plaintiff believes and attempts to allege that Defendants Gore, Lovelace, and Buchanan are responsible for the actions of Defendant Webster in a supervisory capacity, the Complaint fails to state a claim upon which relief can be granted.

### c.   Federal Causes of Action Pursuant to §§ 1981, 1985, and 1986

In the Complaint, Plaintiff generically lists violations of 42 U.S.C. §§ 1981, 1985, and 1986 as the fourth, sixth, and seventh causes of actions, respectively.  (ECF No. 1-2 at 4.)  As stated above, the Court finds that the only cause of action that does not violate Rule 8's notice requirement is Plaintiff's § 1983 cause of action against Defendant Webster. Moreover, besides violating Rule 8, these additional federal causes of action fail to state a claim and must be dismissed pursuant to Rule 12(b)(6).

### i.   *§ 1981*

Section 1981 gives all citizens of the United States "the same right in every State or Territory to make and enforce contracts . . . as enjoyed by white citizens."  42 U.S.C. § 1981.  The purpose of §1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (quoting *McDonald v. Santa Fe Trail Transp.*

*Co.*, 427 U.S. 273, 295–96 (1976)); *see also Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1988) ("Section 1981 forbids all racial discrimination in the making of both public and private contracts."). "Any claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). A viable § 1981 claim also requires the plaintiff to allege facts showing "intentional discrimination on account of race." *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989).

Here, the Complaint does not allege any facts to support a plausible § 1981 claim. Plaintiff does not allege that any Defendant acted with discriminatory intent on account of his race or any facts pertaining to contract formation and enforcement. Accordingly, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** and the Complaint **DISMISSED** as to Plaintiff's § 1981 cause of action.

ii.  *§§ 1985 and 1986*

Section 1985(3) prohibits conspiracies to interfere with an individual's civil rights. *See* 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) to deprive any person or class of persons of the equal protection of the laws; (3) an act done by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States. *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "A § 1985 claim 'must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient.'" *Hamilton v. Hurtado*, No. 12cv1940 JAH (RBB), 2013 WL 3964755, at *7–8 (S.D. Cal. July 31, 2013) (citations omitted) (quoting *Karim–Panahi*, 839 F.2d at 626). Section 1986 imposes liability on every person who knows of an impending violation of § 1985 but neglects or refuses to prevent the violation. *Karim–Panahi*, 839 F.2d at 626.

Here, Plaintiff does not allege any facts to support a plausible § 1985 claim. The Court's analysis begins and ends with the first *Gillespie* factor, for Plaintiff has not alleged any facts that give rise to a plausible conspiracy. And without a viable § 1985 claim, Plaintiff's § 1986 claim necessarily fails. Accordingly, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** and the Complaint **DISMISSED** as to Plaintiff's § 1985 and § 1986 causes of action.

### d.   State Law Causes of Action

In the Complaint, Plaintiff generically lists three California state law causes of action: (1) general negligence against Defendant Webster; (2) intentional tort against Defendant Webster; and (3) premises liability. (ECF No. 1-2 at 5–7.) As stated above, the Court finds that the only cause of action that does not violate Rule 8's notice requirement is Plaintiff's § 1983 cause of action and only as to Defendant Webster. However, like with Plaintiff's §§ 1981, 1985, and 1986 causes of action, Plaintiff's state law causes of action not only violate Rule 8, but fail to state a claim and must be dismissed pursuant to Rule 12(b)(6).

### i.   *California Government Claims Act*

Defendants argue that Plaintiff's state law claims should be dismissed on the basis that the Complaint fails to allege compliance with the claims-presentation requirements of the California Government Claims Act ("CGCA"). (ECF No. 3-1 at 17.) Defendants further argue that Plaintiff's time to file a government claim has lapsed, so Plaintiff cannot cure this defect. (*Id.* at 19.) Plaintiff makes no argument in his opposition with respect to his non-compliance with the claims-presentation requirements of the CGCA.

### A.   Legal Standard

The CGCA requires a person asserting a tort claim against a California governmental entity or employee to present his claim to the California Victim Compensation and Government Claims Board before filing an action for damages against that entity or employee. *See* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950–950.2. The California Government Claims Act has strict time limits for both presenting a claim to the Claims

Board and filing a court action after the Claims Board rejects the claim.  First, a person must present his tort claim to the Claims Board within six months of the accrual of the claim.  Cal. Gov't Code § 911.2.  Presentation of a written claim, and action on or rejection of the claim by the Claims Board, are conditions precedent to filing a suit.  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208–09 (2007).  Thereafter, any suit based on the claim presented to the Claims Board must be commenced within six months from the date the Claims Board's written notice of rejection is deposited in the mail.  Cal. Gov't Code § 945.6(a)(1); *Clark v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010).  "Compliance with the Government Claims Act is an element of the cause of action, . . . and a failure to file a claim is fatal to a cause of action."  *King v. Chokatos*, No. 1:12-cv-01936-LJO-GSA-PC, 2014 WL 3362237, at *5 (E.D. Cal. July 9, 2014) (citations omitted) (quoting *Hacienda La Puente Unified Sch. Dist. of L.A. v. Honig*, 976 F.2d 487, 495 (9th Cir. 1992) (citing *State v. Superior Ct. of King Cnty. (Bodde)*, 32 Cal. 4th 1234, 1243 (2004)).  "A plaintiff 'must allege facts demonstrating or excusing compliance with the claim presentation requirement.'"  *Id.* (quoting *Bodde*, 32 Cal. 4th at 1243).

### B.   Analysis

The Court agrees with Defendants that Plaintiff was required to comply with the CGCA's claims-presentation requirements, as the events alleged in the Complaint are claimed to be within Defendants' duties as employees of the San Diego Sheriff's Department.  The Complaint, however, does not allege compliance with the CGCA, and therefore, fails to state a claim for general negligence and intentional tort against Defendant Webster and premises liability.

Defendants contend that Plaintiff cannot cure this defect because a government claim is due within six months after the cause of action accrues, and Plaintiff's six months to file a claim as to the events alleged in the Complaint lapsed in November 2019.  (ECF No. 3-1 at 19.)  Defendants provide that as of January 2020, Plaintiff had not filed any claim with the County of San Diego as to the events alleged in the Complaint.  To their motion, Defendants attach the declaration of Brett Barnes, the Claims and Investigation

Supervisor of the County of San Diego.  (ECF No. 3-2.)  Mr. Barnes, as the custodian of claims records for the County of San Diego, declares that he conducted a diligent search through the County's claims records database and determined that "the Claims Division has no record of any government tort claim presented by Plaintiff" against any of the named Defendants "for the May 2019 events that are the subject" of the Complaint.  (*Id.* ¶¶ 1, 3– 4.)  Mr. Barnes further declares that the Claims Division "has no record of any government tort claim presented by [Plaintiff] regarding" any of the named Defendants.  (*Id.* ¶ 5.)  Based on Mr. Barnes' declaration, Defendants request that the Court take judicial notice of the fact that "Plaintiff did not file a claim with the County of San Diego regarding the May 14–24, 2019, events that are the subject of the Complaint."  (ECF No. 3-3 at 2.)   In his opposition, Plaintiff does not address Defendants' request for judicial notice.  He does not oppose the request, nor does he dispute Defendants' factual assertion that Plaintiff failed to file a claim within the mandated time period.  (*See* ECF No. 5.)

"[A]s a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee*, 250 F.3d at 688.  However, a court may consider matters of judicial notice when ruling on a motion to dismiss without converting the motion into a motion for summary judgment.  *Id.*  Judicial notice under Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  A court may, therefore, "'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of [a] motion to dismiss."  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

The Court finds that the absence of any government claim filed by Plaintiff against Defendants in the County of San Diego's claims records is a matter of public record that is not reasonably subject to dispute.  *See, e.g.*, *Pearson v. Baughman*, No. CV 18-5065 CJC(JC), 2018 WL 3869464, at *2 n.3 (C.D. Cal. July 16, 2018) (taking judicial notice of

20-cv-00158-WQH-JLB

the absence of court records); *Lee v. L.A. Police Dep't*, No. CV 08–5165 JVS (FFM), 2011 WL 1691940, at *5 (C.D. Cal. Mar. 21, 2011) (noting that the court had previously taken "judicial notice of the absence in the public record of any [government] claim filed by the plaintiff with the City of Los Angeles" and dismissing the plaintiff's state law claims for noncompliance with the CGCA), *adopted by* 2011 WL 1671937 (C.D. Cal. May 3, 2011). Therefore, the Court grants in part Defendants' request for judicial notice. The Court will take judicial notice of the fact that there is no record of a claim filed by Plaintiff in the County of San Diego's Claims Division database against any of the Defendants during the relevant time period. However, the Court does not take judicial notice of the next inferential fact, urged by Defendants, that "Plaintiff did not file a claim with the County of San Diego regarding the May 14–24, 2019, events that are the subject of the Complaint." (ECF No. 3-3 at 2.)

Accordingly, because the Complaint does not allege compliance with the CGCA, and Defendants have submitted undisputed evidence, subject to judicial notice, that there are no claims filed by Plaintiff against any of the Defendants in the County of San Diego's claims records database, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** and Plaintiff's state law causes of action for general negligence, intentional tort, and premises liability be **DISMISSED**.

ii.   *Supplemental Jurisdiction over State Law Causes of Action*

In light of the recommended dismissal of all of Plaintiff's federal causes of action,[7] there exists an additional ground to dismiss Plaintiff's state law causes of action, regardless of whether Plaintiff complied with the claims-presentation requirements of the CGCA. Because the parties in this case are non-diverse, the federal law claims that the Court recommends dismissal of provide the only basis for federal subject matter jurisdiction. Although a federal court may exercise supplemental jurisdiction over state law claims "that

---

[7]      As addressed in Section V. below, the Court recommends *sua sponte* dismissal of the Doe Defendants. *See infra* pp. 27–31.

are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3). When considering whether to retain supplemental jurisdiction over state law claims, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). The U.S. Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court finds that the balance of factors weighs in favor of declining supplemental jurisdiction over Plaintiff's state law causes of action. This case has yet to proceed beyond the initial pleadings stage and few judicial resources have been expended thus far. Therefore, if the District Court adopts the recommendation to dismiss Plaintiff's federal causes of action, the Court **RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law causes of action and **DISMISS** them accordingly.

## V.    *SUA SPONTE* DISMISSAL OF DOE DEFENDANTS

Plaintiff has yet to identify and serve Doe Defendants 1–5, and as such, they have not joined in Defendants' Motion to Dismiss. Nevertheless, "[a] trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6)," provided proper notice is given to the Plaintiff. *Omar v. Sea-Land Ser., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *accord Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim, but the court must give notice of its *sua sponte* intention to invoke Rule 12(b)(6) and afford plaintiffs 'an opportunity to at least submit a written memorandum in opposition to such motion.'"

(citations omitted) (quoting *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979))).  The Court here finds that, after proper notice is given to Plaintiff, his claims against the Doe Defendants should be dismissed *sua sponte*, for they fail to state a claim.

As stated above, Plaintiff alleges that on or about May 19, 2019, Doe Defendant 1 "denied [him] church service." (ECF No. 1-2 at 11.)  Plaintiff further alleges that when he questioned "[d]eputies" about being denied church service and requested phone access to call his attorney, he was moved a new cell. (*Id.*)  Plaintiff asserts that he was "locked in this cell for approximately four[] days without running water," despite making "numerous complaints" to Doe Defendants 2, 3, 4, and 5. (*Id.*)  Plaintiff was then transferred to GBDF on or about May 24, 2019, and "lost consciousness" while a deputy was escorting him to housing. (*Id.* at 11–12.)  Seemingly that same day, Plaintiff was transported to Sharp Chula Vista Hospital, where he received intravenous fluids and a doctor told him he was "severely dehydrated." (*Id.* at 14.)  Plaintiff explained to the doctor that he "had been locked in a cell for a few days with no running water, no water for approx[imately] [four] days." (*Id.*)

## A.   Doe Defendant 1

The Court finds that Plaintiff's allegation that Doe Defendant 1 "denied [him] church service" on one occasion fails to state a claim.  The Court construes Plaintiff's claim against Doe Defendant 1 as a violation of the First Amendment's Free Exercise Clause.  To state a claim under the Free Exercise Clause, a prisoner must plausibly allege that a prison official's actions (a) "substantially burden[]" the exercise of a sincerely-held religious belief, and (b) were not "rationally related to legitimate penological interests." *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015).  "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Id.*  An intrusion that is "relatively short-term and sporadic" does not constitute a substantial burden under the First Amendment. *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998); *accord Brown v. Washington*, 752 F. App'x 402, 405 (9th Cir. 2018) (providing that a "one time set of circumstances" or an "isolated

incident" is insufficient to constitute a "substantial burden of [a] plaintiff's religious beliefs" under the First Amendment).

Here, Plaintiff's allegation that Doe Defendant 1 denied him "church service" on a single occasion, without any facts surrounding the denial, does not give rise to viable First Amendment claim.[8]   As alleged, Doe Defendant 1's denial of church service appears to have been an isolated incident, and thus, did not amount to a substantial burden on any purported religious belief of Plaintiff's.   Accordingly, the Court **RECOMMENDS** that after proper notice is given to Plaintiff by way of this Report and Recommendation, the Complaint be **DISMISSED** as to Doe Defendant 1.

B.   <u>Doe Defendants 2, 3, 4, and 5</u>

The Court finds that Plaintiff's allegations against Doe Defendants 2, 3, 4, and 5 likewise fail to state a claim.   The Court construes Plaintiff's allegations against these Doe Defendants as a conditions-of-confinement claim under the Fourteenth Amendment's Due Process Clause.   Although the law in this area remains somewhat unsettled, the Ninth Circuit has indicated that claims brought by pretrial detainees for inhumane conditions of confinement under the Fourteenth Amendment should be evaluated under the objectively unreasonable standard articulated by the Supreme Court in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).   *See Castro*, 833 F.3d at 1069–70.   "Prior to *Kingsley*, a pretrial detainee complaining of conditions of confinement had to allege facts that, if true, would satisfy both prongs of a bifurcated test under the Eighth Amendment."   *King v. County of Los Angeles*, No. CV 15-07072-SVW (AFM), 2016 WL 6902097, at *8 (C.D. Cal. Oct. 7, 2016).   Under this test, the plaintiff is required to allege that (1) objectively, he was subjected to conditions that "are or were serious enough to be considered cruel and

---

[8]   The Court notes that there is nothing in the Complaint to suggest that Doe Defendant 1 had any involvement in Plaintiff's alleged subsequent deprivation of access to running water.   According to the Complaint, Plaintiff's transfer to the cell without running water was made after he complained to unspecified deputies (so, presumably not any of the Doe defendants) about being denied church services.   (*See* ECF No. 1-2 at 11.)

unusual," and (2) subjectively, the defendants acted with "a sufficiently culpable state of mind (i.e., with 'deliberate indifference')." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)).   Subsequent to *Kingsley*, and in consideration of the Ninth Circuit's application and extension of *Kingsley* to a pretrial detainee's failure-to-protect claim in *Castro* and an inadequate medical care claim in *Gordon*, it appears to this Court that a pretrial detainee need only allege that defendants engaged in "objectively unreasonable" conduct to satisfy the second prong of a conditions-of-confinement claim. *See Castro*, 833 F.3d at 1071.

The Court finds that Plaintiff's allegation that he was confined to a cell for four days without water[9] may be sufficiently serious to constitute a constitutional violation. *See Harris v. Lake Cnty. Sheriff's Dep't*, No. 15-CV-00850 NJV, 2015 WL 5138388, at *6 (N.D. Cal. Sept. 1, 2015) ("Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim."); *see also Vasquez v. County of Kern*, 949 F.3d 1153, 1163–64 (9th Cir. 2020) ("[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*, while the Eighth amendment only prevents the impositions *of cruel and unusual* punishment of *convicted* prisoners.").   Nevertheless, as currently alleged in the Complaint, Plaintiff's allegation is too lacking in detail for the Court to find the actions of Doe Defendants 2, 3, 4, 5 "objectively unreasonable."   There are no facts providing who these Doe Defendants are and the circumstances surrounding the "numerous complaints" that Plaintiff made to each of them, including how Plaintiff made his complaints.

Plaintiff's allegation against Doe Defendants 2, 3, 4, and 5 also fail to state a claim even if the Court construes it as a First Amendment retaliation claim.   To the extent Plaintiff

---

[9]   The Court notes that the Complaint is ambiguous with respect to whether Plaintiff was without "running" water in his cell—which is what he alleges he complained to Doe Defendants 2–5 about—or without water to drink.

intends to implicitly suggest that his being placed in a cell for "approximately four[] days without running water" was a consequence of his questioning unspecified "deputies" about being denied church service and requesting phone access to call his attorney, he fails to connect any such alleged retaliation to Doe Defendants 2, 3, 4 and 5.  The Complaint does not allege that these Doe Defendants were aware of Plaintiff's complaints about being denied church service or, in fact, any events preceding Plaintiff's confinement to this cell. The Complaint alleges only that Plaintiff made "numerous complaints" to Doe Defendants 2, 3, 4, and 5 about the lack of running water in the cell.  (ECF No. 1-2 at 11.)

Accordingly, the Court **RECOMMENDS** that after proper notice is given to Plaintiff by way of this Report and Recommendation, the Complaint be **DISMISSED** as to Doe Defendants 2, 3, 4, and 5.

## VI.   <u>LEAVE TO AMEND</u>

When dismissing a *pro se* plaintiff's civil rights complaint for failure to state a claim, the court should ordinarily provide the plaintiff an opportunity to cure.  *Karim–Panahi*, 839 F.2d at 624–25.  However, if the complaint's deficiencies cannot be cured by amendment, the court should dismiss the complaint without leave to amend.  *Id.*; *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).  In other words, where leave to amend would be futile, the court may deny leave to amend.  *Desoto v. Yellow Freights Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)).

Defendants here argue that Plaintiff's opposition does not demonstrate how the Complaint is capable of amendment.  (ECF No. 6 at 3–4.)  Although true, regardless of what Plaintiff has included in his opposition, pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should grant leave to amend when justice so requires, "even if no request to amend the pleading was made."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). It is not absolutely clear to the Court that Plaintiff could not cure the deficiencies in the Complaint, and Plaintiff has not yet had an opportunity to amend.  Justice therefore requires that the Court grant Plaintiff leave to amend all causes of action in the Complaint.

Accordingly, the Court **RECOMMENDS** that the Complaint be **DISMISSED** in its entirety **WITHOUT PREJUDICE** and with **leave to amend**.

### VII.   <u>CONCLUSION</u>

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion to Quash Service and Dismiss for Lack of Personal Jurisdiction, or alternatively, Dismiss for Failure to State a Claim (ECF No. 10); and **DISMISSING** the Complaint without prejudice and with leave to amend.

**IT IS ORDERED** that no later than **<u>August 10, 2020</u>**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  **Any objections filed by either party must not exceed 15 pages total, including attachments and exhibits.**

**IT IS FURTHER ORDERED** that any reply to any objections shall be filed with the district court and served on all parties no later than **<u>August 17, 2020</u>**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  July 20, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

20-cv-00158-WQH-JLB